IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

PENNY JUANITA WHITSON                                                    PLAINTIFF

       v.                        Civil No. 3:22-cv-03007-TLB-MEF

CORPORAL ANDREW HOLLIS,
Baxter County Detention Center (BCDC);
JAILER TABITHA MAZE, BCDC;
SERGEANT CLAY MAPLE, BCDC; and
FORMER JAILER DALTON MORRISON                                           DEFENDANTS

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

       Plaintiff, Penny J. Whitson ("Whitson"), filed the above-captioned civil rights action

pursuant to 42 U.S.C. § 1983.   Whitson is currently incarcerated at the McPherson Unit of the

Arkansas Division of Correction ("ADC").   On March 22, 2020,[1] while she was incarcerated in

the Baxter County Detention Center ("BCDC"), Whitson was struck in the mouth by fellow inmate

Vanessa Henschel.   Whitson contends the Defendants failed to protect her from attack by

Henschel and failed to provide her with adequate dental care.   Whitson has sued the Defendants

in both their individual and official capacities.   (ECF No. 1).

       Pending before the Court is Defendants' Motion for Summary Judgment.   (ECF Nos. 33-

35).   Whitson has responded.   (ECF Nos. 49-50).[2]   The Motion is ready for decision.   The

---

[1] The jail incident report contains a date of March 22, 2020, at the top.   (ECF No. 35-4 at 2).   Jailer Maze in her narrative refers to the incident date as being March 20, 2020.   *Id.* at 5.   Corporal Hollis in his narrative report list the incident date as March 23, 2020.   *Id.* at 4.   The witness statements are dated March 22, 2020.   *Id.* at 6, 8-10. Whitson's grievance regarding the incident is dated March 21, 2020.   (ECF No. 35-3 at 21).   Despite the uncertainty about the date of the incident caused by these various reports, the date is not a material fact.   The Court will, therefore, utilize March 22, 2020, as the date of the incident throughout this report and recommendation as set forth in both the Defendants' Statement of Facts and Whitson's Statement of Facts.   (ECF Nos. 35, 50).
[2] The Court wishes to commend Whitson on her response.   She clearly followed the Court's Order in responding to the Summary Judgment Motion.   She cites relevant cases, distinguishes the cases relied on by Defendants, cites to exhibits and submitted exhibits of her own behalf.   She demonstrates a clear understanding of the relevant issues and case law.

1

Honorable Timothy L. Brooks, United States District Judge, referred the case to the undersigned in accordance with 28 U.S.C. § 636(b)(1) and (3) for the purpose of making a Report and Recommendation on the pending Summary Judgment Motion.

## I.    BACKGROUND

### A.    The Summary Judgment Record

Whitson was booked into the BCDC on January 15, 2020, on a parole violation and various pending criminal charges.  (ECF No. 35-2 at 1).[3]  On January 28, 2020, Henschel was booked into the BCDC on a parole revocation and several pending criminal charges, including aggravated assault and three counts of battery.  (ECF No. 35-8 at 1).  Whitson remained incarcerated at the BCDC until April 14, 2020, when she was released on bond.  (ECF No. 35-2 at 1).

On February 14, 2020, Henschel walked by another inmate and punched her in the face. (ECF No. 35-8 at 2).  Henschel was placed in isolation.  *Id.*  On February 24, 2020, Henschel struck Jailer Tabitha King in the left side of her face.  *Id.*  Henschel did this immediately after thanking Jailer King for help with a shower.  *Id.*  Jailer King put Henschel in a head lock while she resisted.  *Id.*  Officers arrived to assist and Henschel was placed in a restraint chair.  *Id.*

During her deposition, Whitson testified that Henschel was placed on lock-down following this incident and inmates were told that she was to remain on lock-down because of her violent tendencies.  (ECF No. 35-9 at 12-13).  Whitson testified that the officers became lax and let Henschel roam around the pod on the morning of March 22, 2020.  *Id.* at 13, 16.  When the female inmates were moved to the visitation area, Henschel entered before Whitson and backhanded Whitson in the face when she started to walk past Henschel.  *Id.*  Whitson testified

---

[3] The booking sheet refers to a probation violation.  (ECF No. 35-1).  It is clear, however, that Whitson was incarcerated on a parole violation.  (*See, e.g.,* ECF No. 35-3 at 6, "I'm doing a 90 day parole violation.")

the blow knocked her over.   *Id.*   She indicated "there was no warning with Vanessa Henschel. There are several incidents where she's just went to hit people for no reason."   *Id.* at 14; *see also Id.* at 17.   Whitson was surprised when Henschel struck her as she "didn't do anything to make her hit me."   *Id.* at 14.   Whitson believed she had asked Henschel earlier in the day to stop staring at her as she showered.   *Id.*

With respect to her injuries, Whitson testified that one of her front teeth was knocked out and another one loosened.   (ECF No. 35-9 at 25).   The pain lasted for about a week.   *Id.* at 26. She saw the nurse the following day and showed her where the tooth had fallen out.   *Id.* at 25. The nurse did not "say anything" but wanted Whitson to be seen by the Advanced Practice Registered Nurse ("APRN").   *Id.*   Whitson was seen by the APRN a few days later and may have been prescribed Tylenol.   *Id.*   Whitson was provided with no other treatment.   *Id.*   The APRN just treated it like "it was not much to worry about."   *Id.*   Whitson testified the BCDC did not take responsibility to pay for her tooth to be replaced and she could not pay for it.   *Id.* at 26. Whitson submitted no requests for medical treatment after the encounter with the APRN.   *Id.*

According to Whitson, Henschel usually did not talk and if she wanted something she put her hand out.   (ECF No. 35-9 at 15-16).   Whitson testified that Henschel does not show emotion. *Id.* at 16.   Whitson had never had a conversation with Henschel.   *Id.*   Whitson testified she had been incarcerated with Henschel on and off for several years.   *Id.* at 15.   While Whitson had never had a problem with Henschel before March 22, 2020, she believed Henschel was mentally unstable.   *Id.* at 15-16.   Whitson testified there was never any warning when Henschel hit someone.   *Id.* at 17.

Jailer Maze reported that on March 22, 2020, all female inmates from C-pod were placed

in the inmate visitation "due to Cpl. Hollis having 309s fix some things in the pod." (ECF No. 35-4 at 5).[4]  Sergeant Maple, Corporal Hollis, and Jailer Morrison were in G-hall dealing with another inmate. *Id.* Jailer Maze reports she was watching the situation in G-hall when the incident occurred between Whitson and Henschel. *Id.* Right after the incident, Jailer Maze indicates an inmate, Whitson she believed, stated they needed the door opened, Henschel was hitting people, and they needed her out of the visitation area. *Id.* Corporal Hollis and Jailer Morrison responded and removed Henschel. *Id.* Jailer Morrison watched the video of the visitation room and observed Henschel strike Whitson a single time at approximately 12:42. *Id.* Corporal Hollis also reviewed the video. *Id.*

Corporal Hollis reported that Whitson claimed she was struck in the mouth for no reason by Henschel. (ECF No. 35-4 at 2). Henschel refused to speak when asked about the incident. *Id.* It was noted the four other inmates in the room backed up Whitson's claims. *Id.* Henschel was charged with third-degree battery. *Id.* at 11.

On March 22, 2020, Whitson submitted a grievance regarding Henschel. (ECF No. 35-3 at 21). First, Whitson noted that Henschel had been staring at her while she showered. *Id.* Whitson asked Henschel to stop. *Id.* Whitson also noted that two other inmates had submitted grievances on March 20 because Henschel was staring at them while they showered. *Id.* Second, Henschel complained that after they were all moved to visitation she was struck in the mouth by Henschel for no reason. *Id.* ("when out of nowhere and for no reason [Henschel] punched me in the mouth"). One front tooth fell out and another was loosened. *Id.* Third, Whitson stated that Henschel had a known record of being violent towards other inmates and jail staff. *Id.* She

---

[4] According to Corporal Hollis, the inmates were all put in the visitation room while a shakedown occurred in the pod. (ECF No. 35-4 at 2).

maintained that the jail failed to protect her from attack.   *Id.*   Whitson asked that criminal charges be brought against Henschel.   *Id.*   Whitson also requested treatment for her teeth.   *Id.*

Whitson provided a witness statement on the date of the incident.   (ECF No. 35-4 at 6). She noted that Henschel had been watching her and other inmates in the shower.   *Id.*   Whitson noted that earlier in the day she had told Henschel numerous times to stop watching her in the shower.   *Id.*   Whitson again recounted Henschel's history of striking a fellow inmate and Jailer King and indicated her belief that Henschel should not have been in general population.   *Id.* Witness statements were also provided by Jennifer Uren, Marla Pennington, Dawn Rowland, and Dakota Frasirr.   *Id.* at 7-10.   All recounted that Henschel had struck Whitson without any warning.   *Id.*   On March 23, 2020, Jailer King reported that Whitson had bruises on her lip, one tooth loose, and another missing.   (ECF No. 35-5 at 2).

By affidavit, Jailer Maze[5] states that on March 22, 2020, she was working as the tower operator controlling the doors and watching the cameras.   (ECF No. 35-10 at 1).   Jailer Maze reports that Henschel was a quiet person and she had no problems with her leading up to the incident with Whitson.   *Id.*   Jailer Maze indicates she conducted cell checks on Henschel and served her food.   *Id.*   On the day of the incident, Jailer Maze described Henschel's demeanor as normal, states Henschel was following orders, and did not appear frustrated or upset.   *Id.*   Jailer Maze indicates she was unaware of any problems between Whitson and Henschel and none had been reported by Whitson.   *Id.* at 1-2.   Jailer Maze says they cannot keep "pre-trial detainees locked down or segregated indefinitely, as that could become a violation of that inmate's constitutional rights."   *Id.* at 2.[6]   When she saw Whitson a couple hours after the incident, Jailer

---

[5] Tabitha Maze is currently a sergeant.
[6] Whitson maintains Henschel was not a pre-trial detainee as she was being held on a probation/parole revocation

Maze states she did not appear to be injured and had no blood or marks on her. *Id.* Jailer Maze also reports that Whitson never informed her that a tooth had been knocked out or that she needed medical care. *Id.* Jailer Maze indicates it is her understanding that Whitson was examined by the jail nurse and APRN. *Id.*

Sergeant Maple's affidavit indicates he also was unaware of any problems between Whitson and Henschel and none were reported to him. (ECF No. 35-11 at 1). Sergeant Maple states he did not see Whitson until later in the day and she did not appear to be seriously injured. *Id.* at 2. When he did see Whitson, he reports that she did not inform him that her tooth had been knocked out or that she needed medical treatment.[7] *Id.*

Jailer Morrison by affidavit says that:

> prior to putting Inmate Henschel in the visitation area, we asked if the other female inmates were okay with Inmate Henschel being placed in the visitation area with them. The other female inmates, including Plaintiff, stated that it would be okay for Inmate Henschel to be in the visitation area with them.

(ECF No. 35-12 at 1). Whitson denies ever being asked whether it was okay to put Henschel in the visitation area with them. (ECF No. 50 at 5).

Jailer Morrison also indicates Henschel was acting normally on the day of the incident; he was unaware of any incidents between Henschel and Whitson; and Whitson had not informed him that she feared for her safety because of Henschel. (ECF No. 35-12 at 1). In fact, prior to the incident, Jailer Morrison states he "recall[ed] seeing Plaintiff sitting with Inmate Henschel and

---

bench warrant as indicated on her booking sheet. (ECF No. 49 at 14). For purposes of this Motion, the Court does not believe, despite certain statements made by Defendants, that Henschel's conviction status is at issue. Even a pretrial detainee may be housed in administrative segregation, if the detainee is dangerous to herself, other detainees, or jail staff.

[7] Whitson maintains that Sergeant Maple did not make himself available to her either before or after the incident. (ECF No. 50 at 5).

6

eating with her.   The conversations between Plaintiff and Inmate Henschel were polite."[8]   *Id.* at 2.   After the incident, Jailer Morrison noted Whitson had a small red mark underneath her neck. *Id.*   Jailer Morrison indicated it did not appear Whitson needed emergency medical care.   *Id.*   He also states Whitson did not inform him her tooth had been knocked out and did not inform him that she needed medical care for "her purported tooth injury."   *Id.*

Corporal Hollis by affidavit states that several days prior to the incident, Henschel was out in the pod with the other female inmates including Whitson.   (ECF No. 35-13 at 1).   He asked the inmates "if they were okay with Inmate Henschel being in general population with them."   *Id.* No objections were made.   *Id.*   Corporal Hollis therefore asserts that Whitson was "okay with Inmate Henschel being in general population with her."   *Id.*   Whitson denies ever having been asked if she was okay with Henschel being in general population.   (ECF No. 50 at 6).

On the day of the incident, Corporal Hollis indicates Henschel's behavior was normal; she did not argue with jailers on that day; she did not exhibit any strange behavior; and she followed orders and did not appear frustrated or upset about anything.   (ECF No. 35-13 at 1).   Nothing struck him as odd about Henschel's behavior.   *Id.*   Corporal Hollis states that Whitson had not reported any issues between her and Henschel and did not indicate she feared for her safety.   *Id.* In short, Corporal Hollis asserts he had "no reason to think Inmate Henschel would hit anyone on the day of the incident."   *Id.* at 2.

After the incident, Whitson did inform Corporal Hollis that her tooth had been knocked out; and she swallowed it.   (ECF No. 35-13 at 2).   Whitson did not appear to be seriously injured or in need of emergency medical care.   *Id.*   Corporal Hollis understood Whitson had been

---

[8] Whitson denies that any jailer entered the pod on the date in question.   (ECF No. 50 at 2).

examined by the nurse. *Id.* According to Corporal Hollis, Whitson never complained she was "provided inadequate medical care by the jail nurse or nurse practitioner." *Id.*

In her deposition, Whitson testified she was aware of a number of inmates Henschel had struck. (ECF No. 35-9 at 21). Whitson named four inmates and testified the "list goes on and on and on." *Id.* She asserted that this happened routinely with Henschel. *Id.* When asked how she heard about those incidents, Whitson indicated she had been incarcerated with the individuals she named and she read reports. *Id.*

When asked how Jailer Maze failed to protect her, Whitson testified Jailer Maze would have seen Henschel out of her cell when she was supposed to be locked down. (ECF No. 35-9 at 22). Whitson stated that at the time she was unaware that Jailer Maze was the staff member in the tower because the windows are black. *Id.*

Whitson testified Corporal Hollis was "over the jailers" and is supposed to ensure compliance with orders. (ECF No. 35-9 at 23). Specifically, Whitson testified he should have "told his officers that he was over that day to make sure [Henschel] was put back into her cell and not around general population." *Id.* Whitson spoke with Corporal Hollis shortly after the attack and he indicated it was a surprise that Henschel struck Whitson. *Id.* at 23-24. Whitson believed Corporal Hollis should have been aware of Henschel's propensity for surprise attacks. *Id.*

Regarding Jailer Morrison, Whitson testified he was "probably the one that serviced chow that let [Henschel] out of her cell and to get her tray and didn't put her back up." (ECF No. 35-9 at 24). Whitson did not believe she spoke with Jailer Morrison that day. *Id.*

As the sergeant-on-duty, Whitson testified Sergeant Maple was "over Hollis and all the other jailers" and "should have informed them . . . to keep [Henschel] away from everybody."

8

(ECF No. 35-9 at 24).    Whitson did not recall speaking to Sergeant Maple the day of the incident. *Id.*

Concerning her official capacity claim, Whitson testified that the Defendants knew Henschel was dangerous and failed to protect her from attack.    (ECF No. 35-9 at 29).

When she was transferred to the Arkansas Division of Correction ("ADC"), Whitson asked for treatment.    (ECF No. 35-9 at 27).    The loose tooth had to be pulled.    *Id.* at 30.    Two years later, Whitson was given a partial but it does not fit well and despite adjustments is painful and cuts her lip.    *Id.* at 27.    As a result, Whitson does not wear it.    *Id.*    Because of the missing teeth, Whitson does not like to talk to people, smile, or laugh and has difficulty eating certain food items such as apples.    *Id.*

### B.  The Video Evidence

Defendants have provided two video clips.    The first is dated March 20, 2020, and begins at time stamp 14:10:15 and ends at 15:57:28.[9]    The video contains no audio.    The video shows the day-room or common area of a cell block and two tiers of four cells each.    Four metal tables with attached stools can be seen.    The cell doors on the bottom tier are open; the cell doors on the top tier are closed.    When the video begins Whitson is seated at a table with one other inmate while Henschel is standing next to the table.    A fourth inmate approaches and takes a seat as does Henschel.    Henschel is seated next to Whitson.    While there are periods when one or more of the inmates are moving around the day-room, the four are seated together for significant periods of time.

It is clear Henschel does interact with the inmates seated at the table; however, the video

---

[9] In Defendants' statement of facts, they indicate the video ends at 16:53:00.  (ECF No. 35 at 2).  This is not true of the video submitted to the Court.

is of poor quality and the Court cannot say with any confidence that Henschel and Whitson are at any point engaging in a conversation. At one point, Whitson slides what appears to be a food item over to Henschel. There are also times when Whitson and Henschel are turned towards one another suggesting they perhaps exchanged remarks. At approximately 15:52, the inmates are provided with meals. Inmates from the top tier come down for their trays. Henschel and Whitson return to the same table with the same other two inmates. At no point is Henschel involved in any altercation; she does not strike any other inmates; nor does she appear to be arguing with any other inmate.

The second video is of the visitation room on March 22, 2020, beginning at time stamp 12:41:57. The video contains no audio. The visitation room is a long narrow area that one side has three cubicles, separated by half walls made of cement block, containing a metal stool bolted to the floor and a telephone. Each cubicle has a glass wall through which can be seen an identical set up on the other side of the glass. There are seven inmates present in the visitation area. Plaintiff is standing to the left side of the door, which is to the far right of the screen, with her back to the camera as the video begins. Henschel is standing a few feet from the door leaning on the wall that appears on the right side of the screen. Another inmate is standing at the door with Whitson. Whitson gestures at something outside the door. A third inmate walks up to the door, looks out, and then turns around and returns to a cubicle. The other inmate standing at the door with Whitson turns and goes to the first cubicle. At approximately 12:42:42, Whitson turns and faces the other inmates and the camera. A second inmate walks to the door again and peers out. At 12:42:54, Whitson walks toward the camera and as she nears Henschel, she is struck on the lower right chin by Henschel. Henschel also pushes Whitson into another inmate and Whitson

10

grabs the cement block half-wall separating the first and second cubicle.   Henschel moves toward the door and the other inmates move away from her.   One inmate reaches over and appears to push an intercom.   At 12:43:29 a male officer is visible at the door.   The door is opened and two male officers are present.   Henschel walks out of the visitation room.   Henschel re-enters the visitation room as Whitson is talking to the officers and is pulled out of the visitation area.   The remaining video is not relevant to this case.

## II.     SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the non-moving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists."   *Nat'l Bank of Comm. v. Dow Chem. Co*., 165 F.3d 602, 607 (8th Cir. 1999).   A fact is "material" if it may "affect the outcome of the suit."   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."   *Matsushita*, 475 U.S. at 586.   "They must show there is sufficient evidence to support a jury verdict in their favor."   *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986)).   "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment."   *Id*. (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).   "When opposing parties tell two different stories, one of which is

blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III.   DISCUSSION

Turning to the Motion currently before the Court, Defendants argue they are entitled to summary judgment in their favor on the following grounds: (1) they did not fail to protect Whitson from a known risk of serious harm; (2) as non-medical Defendants, they exhibited no deliberate indifference to Whitson's serious medical needs; (3) they are entitled to qualified immunity on both claims; and (4), there is no basis for official capacity liability.   Each argument will be addressed in turn.

### A.  Failure to Protect

"Because being subjected to violent assault is not 'part of the penalty that criminal offenders [must] pay for their offenses,' *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), '[t]he Eighth Amendment imposes a duty on the part of prison officials to protect prisoners from violence at the hands of other prisoners.'"   *Whitson v. Stone Cnty. Jail*, 602 F.3d 920, 923 (8th Cir. 2010) (quoting *Perkins v. Grimes,* 161 F.3d 1127, 1129 (8th Cir. 1998)) (cleaned up).[10]   Prison officials must "take reasonable measures to guarantee the safety of inmates."   *Farmer*, 511 U.S. at 832. However, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety."   *Id.* at 834.

To prevail on a failure to protect claim, Whitson must establish: (1) she was "incarcerated under conditions posing a substantial risk of serious harm," and (2) prison officials were

---

[10] The Plaintiff in the present case was also the plaintiff in the Stone County Jail case.

"deliberately indifferent [to her] health or safety." *See Holden v. Hirner*, 663 F.3d 336, 341 (8th Cir. 2011) (internal citations omitted).

The first prong is an objective requirement to ensure the deprivation of a constitutional right is sufficiently serious. *Nelson v. Shuffman*, 603 F.3d 439, 446 (8th Cir. 2010). "The deprivation is objectively, sufficiently serious, under the first requirement when the official's failure to protect resulted in the inmate being incarcerated under conditions posing a substantial risk of serious harm." *Id.* (cleaned up).

The second prong, however, is subjective, requiring Whitson to show the named official "both knew of and disregarded 'an excessive risk to inmate's health or safety.'" *Holden*, 663 F.3d at 341 (quoting *Farmer*, 511 U.S. at 837). "An official is deliberately indifferent if he or she actually knows of the substantial risk and fails to respond reasonably to it." *Young v. Selk*, 508 F.3d 868, 873 (8th Cir. 2007).

Defendants maintain Whitson cannot satisfy either prong. First, they argue there is no evidence that Whitson's incarceration posed a substantial risk to her safety. Second, they contend there is no evidence that they knew of and deliberately disregarded that substantial risk of harm. They stress that there is no evidence Whitson had ever been threatened by Henschel; no evidence Whitson ever had problems with Henschel or reported any problems with Henschel; and no evidence Whitson feared Henschel. They note that just two days prior to the attack Whitson was observed sitting at the same table with Henschel and interacting with her for over two hours; no animus was observed between the two on the date of the attack; and both Whitson and several other inmates reported there was no warning that Henschel would attack Whitson. Instead, Defendants insist the attack came as a complete surprise to Whitson, the other female inmates, and

13

them.   Defendants argue the fact that it was a surprise attack is an insurmountable barrier for Whitson and at a minimum entitles them to the protections of qualified immunity.

Whitson asks the Court to focus on Henschel's known propensity for violence.   Whitson provides evidence that on prior incarcerations in the BCDC, specifically in 2017 and 2018, Henschel assaulted other inmates.   In May 2017, Henschel was charged with aggravated assault after she stabbed another inmate.   (ECF No. 49 at 61-63; victim indicated the attack came out of nowhere; she did not know it was coming; she did not know what set it off).   In November 2017, Henschel initiated a fight by punching a fellow inmate in the face.   (ECF No. 49 at 48).   In February 2018, Henschel was again involved in a fight, but it was determined the other inmate instigated the fight.   (ECF No. 49 at 67).

Whitson also asks the Court to consider the violent offenses (aggravated assault and third-degree battery) Henschel was booked into the BCDC on in 2020, and the two assaults Henschel was involved in in February 2020 (one against an inmate and one against a staff member).   (ECF No. 35-8 at 1; ECF No. 35-8 at 2 (February 13, 2020, punched another inmate in the face); ECF No. 49 at 50 (February 24, 2020, struck Jailer King in the left side of face and head)).   The February 24, 2020, incident resulted in Henschel being charged with second degree battery and impairing the operations of a vital facility.   (ECF No. 49 at 53).   Henschel was also removed from general population "until any safety and security issues abated, at which time Detainee Henschel was returned to general population." *Id.*   The precise date of Henschel's return to general population is unclear from the record.   Whitson maintains it was the date of the attack against her; while Defendants' video exhibit shows Henschel was at the very least allowed to remain out of her cell with other inmates in the pod for more than an hour-and-a-half on March

14

20, 2020.   (ECF No. 35-7).

In *Vandevender v. Sass*, 970 F.3d 972 (8th Cir. 2020), the Court of Appeals for the Eighth Circuit noted that most of their prior failure-to-protect cases arising out of "an inmate-on-inmate assault have involved an attacker who was known to be a volatile, dangerous man; or who previously threatened or fought the victim; or a victim who should have been better protected because of known inmate threats."   *Id.* at 976 (citations omitted).   In those cases, the Eighth Circuit noted that the "substantial risk of serious harm was obvious, and defendants' liability turned on the subjective issue of deliberate indifference (unless the victim had denied or not disclosed the prior threat or altercation to prison officials)."   *Id.*

In *Vandevender*, the Eighth Circuit noted there was no evidence that the attacker, Latimer, had threatened Vandevender or any other inmate; that Latimer was known to be a violent, volatile inmate; that Latimer had previously argued or fought with Vandevender or that the two even knew each other; or that either Latimer or Vandevender had recently been in protective custody or in a restrictive status such as administrative segregation.   *Vandevender*, 970 F.3d at 976.   Without any of these factors present, the Eighth Circuit held that Vandevender was the "unfortunate victim of a surprise attack by a fellow inmate."   *Id.*   In cases involving surprise attacks, the Eighth Circuit noted it had upheld the grant of qualified immunity to prison officials.

Defendants maintain insofar as Whitson alleges that they failed to protect her from a specific threat posed by Henschel, that Whitson's own inability to anticipate the surprise attack defeats liability.   *Patterson v. Kelley*, 902 F.3d 845, 851 (8th Cir. 2018) ("as Patterson alleges that the defendants failed to protect him from a specific threated posed by Black, his own inability to anticipate the surprise attack and his decision not to report his altercation with Black the previous

afternoon defeat liability").   The Court agrees the evidence presented does not suggest the existence of a *specific* risk that Henschel would attack Whitson.

As Whitson correctly argues, however, the surprise attack analysis does not end the Court's inquiry in this case.   This is because Whitson has presented evidence tending to establish that Henschel posed a non-specific or general risk of harm to the female inmates she was housed with. Specifically, Whitson has advanced evidence that Henschel had both a past history of attacking fellow inmates at the BCDC, and had in the month just prior to the March 2020 incident attacked both an inmate and a staff member; that Henschel had been placed in restrictive housing following her recent attack on a fellow inmate and her recent attack staff member; that the evidence is unclear as to when a decision, or even if a decision, was made that Henschel could safely be removed from her restrictive housing assignment; and that Henschel had been booked in on violent crimes. Given this evidence, the Court believes a reasonable trier of fact could conclude Whitson was objectively incarcerated under conditions constituting a substantial risk of inmate attacks.

The more difficult question is whether the subjective prong of the failure-to-protect claim has been met.   In other words, has Whitson shown a genuine issue of material fact exists as to whether each of the named Defendants was deliberately indifferent to a general risk of harm to female inmates as a result of Henschel's being in general population.   "[A]n obvious risk of harm may justify an inference that prison officials subjectively disregarded that risk.   But to make such an inference, there must be some evidence showing that the defendants were exposed to the underlying facts revealing that risk."   *Patterson*, 902 F.3d at 852 (citing *Farmer*, 511 U.S. at 842). For example, if there was evidence "that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past" and evidence that

the named Defendant was exposed "to information concerning the risk and thus must have known

about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-

official had actual knowledge of the risk." *Id.* (quoting *Farmer*, 511 U.S. at 842).

Defendants again seek to shift the Court's focus to the specific fact that not even Whitson

anticipated the attack.  If Whitson could not anticipate the attack, they contend they could not

have anticipated it.  It would be an error, however, to focus on "Whitson's state of mind as to

whether [Henschel] would attack her that morning—[this] fact . . . is mostly irrelevant." *Whitson*,

602 F.3d at 923.  "Whitson's failure to give advance notice of the unanticipated [attack] is

inconclusive as to the defendants' subjective knowledge.  A prison official may not 'escape

liability for deliberate indifference by showing that, while he was aware of an obvious, substantial

risk to inmate safety, he did not know that the complainant was especially likely to be assaulted

by the specific prisoner who eventually committed the assault.'" *Id.* (quoting *Farmer*, 511 U.S.

at 843).

Defendants also suggest they could not constitutionally segregate Henschel indefinitely

based on the fact that some of her charges on arrest were violent offenses.   The Court agrees that

in general "prisons 'are not required to segregate indefinitely all inmates whose original crimes

suggest they might be capable of further violence.'" *Blades v. Schuetzle*, 302 F.3d 801, 803 (8th

Cir. 2002) (inmate serving long sentence) (quoting *Curry v. Crist*, 226 F.3d 974, 978 (8th Cir.

2000) (inmate serving life sentence)).   But Defendants seek to carry these holdings too far.   First,

there is no evidence that Henschel was, or would be, incarcerated at the BCDC for a lengthy period.

Second, these cases do not stand for the proposition that Defendants could not have constitutionally

segregated Henschel, even if she was in pretrial status, where there is evidence both that she was

incarcerated in January on crimes of violence *and* that by mid-February she had already attacked another inmate and a jailer.

As previously noted, each named Defendant denies having any knowledge that Henschel had threatened Whitson, posed a threat to Whitson, had any problems with Whitson, or would attack Whitson; each named Defendant denies having had any issues or problems with Henschel; none of the Defendants were physically present with the attack occurred; Defendants deny having observed any serious injuries; and Defendants maintain they did not deny Whitson access to jail medical staff.   All Defendants state they do not keep pretrial detainees locked down or segregated indefinitely as to do so would violate the detainee's constitutional rights.

Defendant Maze was operating the tower but did not see the altercation as her focus was on G-Hall.   (ECF No. 35-10 at 1).   Sergeant Maple was on-duty but did not see Whitson until later that day.   (ECF No. 35-11 at 2).   Jailer Morrison indicates he was on-duty and that prior to placing Henschel in the visiting area they asked the other female inmates, including Whitson, if it would be "okay for Inmate Henschel to be in the visitation area with them."   (ECF No. 35-12 at 1).   Jailer Morrison also states that prior to the date of the incident, he recalled seeing Whitson sitting with Henschel, eating with her, and engaging in polite conversation with her.   *Id.* at 2. Corporal Hollis was also on duty on the date of the incident.   (ECF No. 35-13 at 1).   Corporal Hollis maintains that "[s]everal days prior to the incident at issue in this lawsuit, Inmate Henschel was out in the pod with the other females, including Plaintiff.   I asked the inmates housed in the pod if they were okay with Inmate Henschel being in the pod with them."   *Id.*   There were no objections.   *Id.*   After the incident Whitson did inform Corporal Hollis that her tooth had been knocked out but he did not observe any serious injuries or need for emergency medical care.   *Id.*

at 2.

Curiously, and likely purposefully, no Defendant addresses the issue of whether they were aware of Henschel's history of violent attacks on inmates and staff.   No Defendant indicates when Henschel was removed from lock down status or segregated housing because of her attack on a fellow inmate and Jailer King in February 2020.   However, if Henschel were not on some type of lock down status, it belies reason that both Corporal Hollis and Jailer Morrison would ask the other females in the pod whether it would be "okay" if Henschel was allowed to remain in general population on any given date or whether she could be moved to visitation with them on the date in question.   The Court knows of no other detention center where an inmate's housing status or movement is dictated by the whims of the other pod inmates.   Given these curious gaps in the evidence presented by Defendants and considering the evidence submitted by Whitson showing Henschel's propensity towards violence, the Court believes an inference could be drawn that the named Defendants exhibited deliberate indifference to a substantial risk of harm to the female inmates caused by Henschel's presence in general population.   Defendants have not met their burden of showing they are entitled to summary judgment as a matter of law.

Defendants also maintain they are entitled to qualified immunity.   "Government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."   *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).   "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'"   *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 341-43 (1986)).

Public officials are "immune from suit under § 1983 unless [their] actions [1] violated constitutional or statutory rights that [2] were clearly established at the time of the violation." *Perry v. Adams*, 993 F.3d 584, 587 (8th Cir. 2021).   The Court may take up the questions in either order.   *L.G. Through M.G. v. Columbia Public Sch.*, 990 F.3d 1145, 1147 (8th Cir. 2021).

As noted above, there are genuine issues of material fact as to both the objective and subjective prongs of the failure to protect claim.   Whitson is, therefore, entitled to proceed on her claim unless the Defendants are entitled to qualified immunity.   The question becomes "whether *on the facts presented*, [Defendants] knew of a substantial risk of harm yet failed to act."   *Perry*, 993 F.3d at 587.

The Eighth Circuit has:

> identified three ways in which a plaintiff can show that law is clearly established. She may identify existing circuit precedent involving sufficiently similar facts that squarely governs the situation.   Or a plaintiff may point to "a robust consensus of cases of persuasive authority" establishing that the facts of her cases make out a violation of clearly established right.   Finally, a plaintiff may show, in rare instances, that a general constitutional rule applies with "obvious clarity" to the facts at issue and carries the day for her.

*L.G. Through M.G.,* 990 F.3d at 1147-48.

The problem with the analysis in this case is there are issues of fact about what each Defendant knew about Henschel's background, her propensity for violence, and when, or if, she was officially allowed off lock-down or segregated housing.   While the following are undisputed facts (1) Defendants were unaware that Henschel posed a specific threat to Henschel; (2) during prior incarcerations in the BCDC, Henschel had attacked other inmates; (3) Henschel was incarcerated on violent offenses; (4) after her incarceration on January 28, 2020, Henschel had attacked, without warning, a fellow inmate and then a staff

20

member; and (5), Henschel attacked Whitson without warning on March 22, 2020, the Court does not know whether each Defendant was aware of facts two through four. Defendants knowledge in this regard is critical to the Court's analysis of the "clearly established" prong of the qualified immunity analysis.

The Court is required to review the summary judgment record in the light most favorable to Whitson and to afford her all reasonable inferences to be drawn from that record. *Davis v. Hall*, 375 F.3d 703, 711 (8th Cir. 2004). "Entry of summary judgment resting on qualified immunity is appropriate if, viewed through this lens, no genuine issue of material facts exists regarding whether the officials' actions, even if unlawful, were objectively reasonable 'in light of the legal rules that were clearly established at the time [the actions were] taken.'" *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (internal citation omitted)). This is a fact-intensive inquiry to be undertaken in the light of the specific context of the case. The decision as to whether there was an Eighth Amendment failure-to-protect violation turns on the question of whether each of the named Defendants had actual knowledge that Henschel posed a substantial risk of serious harm to the female inmates. If they had this knowledge, the clearly established law is such that a reasonable detention officer would have known that placing Henschel in general population with the other female inmates would subject them to a substantial risk of serious harm.

In other words, to determine if Plaintiff's right was clearly established at the time of the alleged deprivation, the Court "must . . . examine the information possessed by the governmental official accused of wrongdoing in order to determine whether, given the facts known to the official at the time, a reasonable government official would have known that

his actions violated the law." *Langford v. Norris*, 614 F.3d 445, 461 (8th Cir. 2010).   As questions of fact exist as to what Defendants knew at the time Henschel was moved to the visitation room with Whitson, the Court cannot find Defendants are entitled to qualified immunity.   *See Davis*, 375 F.3d at 712 (questions of fact preclude entry of summary judgment on qualified immunity grounds); *see also Yellow Horse v. Pennington Cnty.*, 225 F.3d 923, 927 (8th Cir. 2000) (once Defendant asserts qualified immunity, Plaintiff bears the burden of showing a material question of fact exists).

## B.  Denial of Medical Care

The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to prisoners' serious medical needs.   *Luckert v. Dodge Cnty.*, 684 F.3d 808, 817 (8th Cir. 2012).   To prevail on her Eighth Amendment claim, Plaintiff must prove that each Defendant acted with deliberate indifference to her serious medical needs.   *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [she] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)).

To show that she suffered from an objectively serious medical need Whitson must show she "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (citation omitted).   In this regard, Whitson maintains

22

that loss of one front tooth and the loosening of another constitutes a serious permanent injury that is obvious to a layperson.   (ECF No. 50 at 6).

For the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation."   *Popoalii v. Correctional Med. Servs.*, 512 F.3d 488, 499 (8th Cir. 2008) (citation omitted).   "Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct."   *Id*.

Deliberate indifference may be manifested by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104–05.   However, the "Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish."   *Jenkins v. County of Hennepin, Minn.*, 557 F.3d 628, 633 (8th Cir. 2009).

In this case, none of the named Defendants are on the medical staff.   There is no evidence they ignored an acute or escalating situation.   Although not seen that day, Whitson was seen by the jail nurse the following day and the APRN on March 25, 2020.   (ECF No. 50 at 5).   "Prison officials lacking medical expertise are entitled to rely on the opinions of medical staff regarding inmate diagnosis and the decision of whether to refer the inmate to outside doctors or dentists." *Holden v. Hirner*, 663 F.3d 336, 343 (8th Cir. 2011).   No reasonable trier of fact could find that the named Defendants were deliberately indifferent to Whitson's serious medical needs.   Having found that the facts do not make out a constitutional violation, Defendants are entitled to qualified immunity on this claim.   *See, e.g., Krout v. Goemmer*, 583 F.3d 557, 564 (8th Cir. 2009) (unless the facts make out a violation of a constitutional right the Defendant is entitled to qualified

immunity).

## C. Official Capacity Liability

From her summary judgment response, it is clear that Whitson is no longer pursuing her official capacity claims.   In her response, she indicates she has sued the Defendants in their individual capacities only.   (ECF No. 48 at 1, 2).   Further, even if she had not made this clear, she advances no argument that Baxter County had an unconstitutional, policy, custom, or practice; but rather, her claim is that Defendants failed to follow BCDC policies regarding the classification of inmates and the use of administrative segregation.   In this regard, Whitson argues the BCDC classification policy was misapplied when both she and Henschel were given the same classification despite the fact that Whitson had not been charged with violent crimes and had no history of attacking other inmates or staff.   Whitson additionally argues that Defendants clearly could have used the administrative segregation policy to separate Henschel from other inmates. "[T]here is no § 1983 liability for violating prisoner policy."   *Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997).

## D. Request to Amend Complaint

In her summary judgment response, Whitson asks to be allowed to add the APRN as a Defendant.   (ECF No. 48).   The request is untimely.   As provided in the Initial Scheduling Order (ECF No. 26), which was issued on May 26, 2022, all motions to amend pleadings or join other parties must have been filed by August 24, 2022.   Now, more than five months later, and when the Court has a dispositive motion before it for decision, Whitson seeks belatedly to add a Defendant.   It is far too late at this stage of the litigation to add a new party.   Moreover, Whitson advances no justification for her failure to move to add the APRN as a Defendant before the

deadline on August 24, 2022.

### IV.    CONCLUSION

For the reasons discussed above, the undersigned recommends that:

- Defendants' Motion for Summary Judgment (ECF No. 33) be **DENIED** on the failure-to-protect claim.

- Defendants' Motion for Summary Judgment be **GRANTED** on the denial of medical care claims and the official capacity claims.   And,

- Plaintiff's request to amend her Complaint to add the APRN as a Defendant be **DENIED** as it was not timely made under the Initial Scheduling Order.

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).   The failure to file timely objections may result in waiver of the right to appeal questions of fact.   The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 13th day of February 2023.

/s/   *Mark E. Ford*
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE